UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X
VIDA LONGEVITY FUND, LP, and :
WELLS FARGO BANK, NA, as securities :
intermediary for Vida Longevity Fund, LP, :
  :
                   Plaintiffs, :
  :
     - against -      : **MEMORANDUM DECISION AND**
  : **ORDER**
  :
MARK JAY GOLD and LAURIE BETH : 22-cv-6114 (BMC)
GOLD, individually, THE ESTATE OF :
CECILE GOLD, NASSAU LIFE :
INSURANCE COMPANY, f/k/a PHL :
Variable Insurance Company, :
  :
                   Defendants. :
----------------------------------------------------------- X

**COGAN**, District Judge.

     This is an action to recover the death benefit proceeds of a life insurance policy that insured the life of Cecile Gold, who passed away in 2022. Vida Longevity Fund, LP, bought the policy on the life settlement market from a third party in 2017. Both parties, plaintiff Wells Fargo Bank, NA, in its capacity as securities intermediary for Vida (collectively, "Vida"[1]), and defendant Estate of Cecile Gold (the "Estate"), contend that they are entitled to the proceeds of the policy. The Court previously granted summary judgment in favor of Vida, and the case is currently on appeal to the Second Circuit.

     Presently before the Court is the Estate's motion to unseal all portions of the docket that were previously filed under seal with its consent. Because the Estate has offered neither a

---

[1] Although the Court is using the collective term "Vida," it is not entirely clear to the Court who the real party in interest is. The opposition to the motion was filed by Wells Fargo as Securities Intermediary for Vida, and NorthStar Life Services, LLC, a non-party which apparently services the life insurance policy at issue.

justification for its change in position nor a reason why these sealed documents are of any particular interest to the public, its motion is denied.

## BACKGROUND

The Court's prior summary judgment decision sets forth the facts giving rise to this case, see Wells Fargo Bank, N.A. v. The Estate of Cecile Gold, No. 22-cv-6114, 2025 WL 1808671 (E.D.N.Y. July 1, 2025), familiarity with which is assumed.  To summarize, the dispute is over the proceeds of a life insurance policy.  The decedent Cecile Gold and her son, a life insurance agent, learned that they could make money by taking out an unneeded life insurance policy and then selling it.  She did not pay the premiums for the policy out of pocket; rather, she funded them with a loan secured by the policy.  When the loan came due, she sold the policy, which ultimately reached Vida, for a lot more than the amount outstanding on the loan, and she retained those proceeds.  That was her and her heir's intent in taking out the policy in the first place – not to get her estate the death benefits upon her demise.[2]

Applying Wisconsin law, this Court held that, although Vida and its predecessors did not have an insurable interest in the policy because they were "strangers" to Cecile Gold, the Estate and its predecessors' investment goal in structuring the transaction to receive up-front payments in lieu of death benefits, without any expectation of ever receiving the policy proceeds on death, left the Estate with unclean hands, thereby allowing Vida to retain the policy proceeds.

---

[2] The action is one of, or at least is similar to, frequent disputes arising from Stranger Originated Life Insurance Policies ("STOLI").  Many states have attempted in different ways to regulate or prohibit this business, viewing it as a form of wagering on how long a person is going to live.  See generally "Life Settlements Try to Shake Off STOLI," Insurance NewsNet Magazine, https://tinyurl.com/bduhyxsv  (Sept. 1, 2024).  If there is a difference in this case, it is that the transaction "originated" with the son and heir of Cecile Gold, Mark Gold, who was himself a life insurance agent.  Mark Gold connected Cecile Gold with James Teegarden, another life insurance agent, to procure this policy on his mother's life from Timber Creek Financial LLC, rather than Cecil Gold responding to an unsolicited approach from Timber Creek or another policy provider or broker.  In any event, the policy here does not appear to have been obtained "with a genuine intent to obtain insurance protection for [Cecile Gold,]" but rather with "an intent to disguise what would otherwise be a gambling transaction by a stranger on [Cecile Gold's] life."  See Life Prod. Clearing LLC v. Angel, 530 F. Supp. 2d 646, 653 (S.D.N.Y. 2008).

Discovery had proceeded under a protective order duly entered by the Court. In connection with their cross-motions for summary judgment, both sides requested leave to file voluminous amounts of that designated material under seal. In fact, the sealing requests were so extensive that the Court dispensed with making an initial finding as to the "sealability" of each document, instead making a general finding that the materials were covered by the parties' protective order; that they contained confidential business and personal information of the parties; and that their need for confidentiality outweighed the public's qualified right of access.[3] The parties were therefore permitted to file designated exhibits on the summary judgment motions under seal without leave of court based on this finding, subject to either party's right to object within one week of the filing of any particular sealed document.

There was only one dispute about sealing. Vida sought to unseal a document – an attorney solicitation letter – that the Estate had marked confidential, and the Estate fought to keep it sealed. The Court unsealed the letter after finding that, as the party in favor of sealing, the Estate had the burden of showing, and failed to show, that its privacy interests outweighed the public's right of access. During the litigation, the Estate never diverted course; it never challenged Vida's confidentiality designations nor sought to unseal anything – ostensibly because the Estate wanted everything to remain under seal. Indeed, in its own words:

> [The Estate] took pains to comply with the Court's protective order by ensuring [designated documents] were filed under seal – even documents that [the Estate] believed should not have been so designated. It was not for [the Estate] to pick and choose in what circumstances [it] should comply with the Court's order.

---

[3] The Court's finding mistakenly referred to a "private" right of access instead of the "public" right of access.

That brings us to the instant motion.  Now portraying itself as the protector of the public interest, the Estate contends that the standard for sealing that the Second Circuit laid out in Lugosch v. Pyramid Co. of Onondaga, 435 F.3d 110, 121 (2d Cir. 2006), is not met.  It also notes that this Court's publicly reported decision on the summary judgment motion sets forth a number of facts that reference the confidential materials so that the need for sealing does not exist.  Vida opposes on the grounds that: (1) the Estate never challenged, and indeed consented to, this Court's Order allowing the filings to be made under seal, and the law of the case doctrine prevents the Estate from raising that issue now; (2) the Estate failed to follow the procedures for the designation of confidential material set forth in the protective order; and (3) this Court is divested of jurisdiction to hear this motion by reason of the pendency of the appeal from this Court's decision granting Vida summary judgment.

## DISCUSSION

Two of Vida's arguments can be disposed of easily.  First, Vida is wrong that the pending appeal from this Court's decision on the merits divests this Court of jurisdiction over the Estate's motion to unseal.  It is well-established that "notwithstanding a pending appeal, a district court retains residual jurisdiction over collateral matters[.]"  See Tancredi v. Metropolitan Life Ins. Co., 378 F.3d 220, 225 (2d Cir. 2004).   Here, the Court of Appeals already has access to the entire docket, sealed or not.  Its determination of the appeal will not be affected one way or the other by this Court's ruling on the instant, collateral motion.

Second, even if Vida is technically correct that the Estate should have followed the procedures in the protective order to get the relief it is seeking, this Court is not going to insist on compliance.  It would bring us back to the same place that we are now, facing the same issue.

Vida's only serious challenge, therefore, is based on the law of the case doctrine.  From the Estate's perspective, the main issue is whether this Court's sealing order meets the standard

4

set for in Lugosch. In making its argument, however, the Estate proceeds as if the Court is determining that issue for the first time. It is not. The Court already determined years ago that the standard for Lugosch was met, and although its findings were not extensive, that was because both sides sought sealing and neither side, save for the one document referenced above, objected to the sealing, despite the Court having established a procedure for doing so. So, before this Court even gets to the Lugosch analysis, it needs to determine whether the Estate has offered the Court "cogent and compelling reasons" for reneging on its previous position that established the law of the case. See Johnson v. Holder, 564 F.3d 95, 99 (2d Cir. 2009).

Like other preclusion doctrines, the purpose of the law of the case doctrine is to prevent courts from having to decide the same issue twice. See generally Rezzonico v. H & R Block, Inc., 182 F.3d 144, 148 (2d Cir. 1999); Chan Ah Wah v. HSBC N. Am. Holdings Inc., No. 15-cv-8974, 2019 WL 859042, at *4 (S.D.N.Y. Feb. 22, 2019) (the law of the case doctrine is "driven by considerations" that include "judicial economy") (quoting United States v. Carr, 557 F.3d 93, 102 (2d Cir. 2009)); Weitzman v. Stein, 908 F. Supp. 187, 193 (S.D.N.Y. 1995) (the "law-of-the-case doctrine promotes judicial economy by permitting a court to refuse to revisit an issue that the court already has decided"). Law of the case "is a discretionary doctrine, and its application within a case depends, in part, on the context in which the court made its first ruling." Pinyuk v. CBE Group, Inc., 561 F. Supp. 3d 334, 338 (E.D.N.Y. 2021) (citing Virgin Atl. Airways, Ltd. v. National Mediation Board, 956 F.2d 1245, 1255 ("The law of the case doctrine is admittedly discretionary and does not limit a court's power to reconsider its own decisions prior to final judgment.")). "[T]he doctrine 'does not rigidly bind a court to its former decisions, but is only addressed to its good sense.'" Colvin v. Keen, 900 F.3d 63, 68 (2d Cir. 2018) (quoting Zdanok v. Glidden Co., 327 F.2d 944, 952-53 (2d Cir. 1964)).

set for in Lugosch. In making its argument, however, the Estate proceeds as if the Court is determining that issue for the first time. It is not. The Court already determined years ago that the standard for Lugosch was met, and although its findings were not extensive, that was because both sides sought sealing and neither side, save for the one document referenced above, objected to the sealing, despite the Court having established a procedure for doing so. So, before this Court even gets to the Lugosch analysis, it needs to determine whether the Estate has offered the Court "cogent and compelling reasons" for reneging on its previous position that established the law of the case. See Johnson v. Holder, 564 F.3d 95, 99 (2d Cir. 2009).

Like other preclusion doctrines, the purpose of the law of the case doctrine is to prevent courts from having to decide the same issue twice. See generally Rezzonico v. H & R Block, Inc., 182 F.3d 144, 148 (2d Cir. 1999); Chan Ah Wah v. HSBC N. Am. Holdings Inc., No. 15-cv-8974, 2019 WL 859042, at *4 (S.D.N.Y. Feb. 22, 2019) (the law of the case doctrine is "driven by considerations" that include "judicial economy") (quoting United States v. Carr, 557 F.3d 93, 102 (2d Cir. 2009)); Weitzman v. Stein, 908 F. Supp. 187, 193 (S.D.N.Y. 1995) (the "law-of-the-case doctrine promotes judicial economy by permitting a court to refuse to revisit an issue that the court already has decided"). Law of the case "is a discretionary doctrine, and its application within a case depends, in part, on the context in which the court made its first ruling." Pinyuk v. CBE Group, Inc., 561 F. Supp. 3d 334, 338 (E.D.N.Y. 2021) (citing Virgin Atl. Airways, Ltd. v. National Mediation Board, 956 F.2d 1245, 1255 ("The law of the case doctrine is admittedly discretionary and does not limit a court's power to reconsider its own decisions prior to final judgment.")). "[T]he doctrine 'does not rigidly bind a court to its former decisions, but is only addressed to its good sense.'" Colvin v. Keen, 900 F.3d 63, 68 (2d Cir. 2018) (quoting Zdanok v. Glidden Co., 327 F.2d 944, 952-53 (2d Cir. 1964)).

Because of the flexibility of the law of the case doctrine, the question becomes whether this Court should exercise its discretion to revisit the Lugosch issue.  In arguing that it should, the Estate has effectively eschewed its prior role as a private litigant and contends that it is acting on behalf of the public at large.  Aside from implicitly contending that this Court's original decision on the Lugosch issue was erroneous (despite the Estate having advocated for that decision), the Estate offers the Court two reasons to vacate its prior sealing order: (1) except for the appeal, the action is now over; and (2) the Court has already effectively disclosed at least some of the sealed matter in its decision on the summary judgment motions.  For these reasons, the Estate contends, the basis for sealing no longer survives a Lugosch analysis.

This Court is unpersuaded for several reasons. First, the pendency of the appeal is significant.  If this Court's decision on summary judgment is reversed – the result that the Estate is seeking – then the exact same concerns that drove the parties to stipulate to sealing will be back in play.  The Estate of course has the right to its appeal, but it cannot have its cake and eat it too by relying on the case being over when the Estate itself has ensured that the case is not over.

Second, the fact that this Court's publicly filed decision discussed the underlying transactions, and thereby, according to the Estate, eliminated the need for confidentiality, does not weigh in favor in revisiting this Court's Order.  Just the opposite.  To the extent the public has any interest in the sealed documents (and, as shown below, the Estate has made no showing that it does), the Estate has effectively conceded that the public's interest is satisfied by this Court's decision explaining the transactions.

Third, and most importantly, the Estate has not even attempted to show why a single one of these sealed documents has become of any interest to the public.  In fact, the Estate has not even identified what documents it is interested in unsealing – it just wants the case unsealed "in

6

its entirety." Looking at the sealed documents individually, however, they contributed, if at all (most of them did not), only to the background of this Court's decision as the structure of the transaction and the parties' motivations in entering into it were undisputed. The sealed documents consist of transaction-specific documents: deposition excerpts; financial statements; actuarial tables that the parties used; HIPAA authorizations; life expectancy reports; and internal and external emails. There are well over 100 of them and the Court sees no benefit to the public in having the parties' internal and external discussions publicized.

In the usual, adversarial Lugosch context, it would be incumbent on the party seeking sealing to show why documents should be sealed. See Lugosch, 435 F.3d at 126. Here, however, where the documents have already been found to satisfy the Lugosch standard; the Estate has already forgone the established procedure for objecting to sealing; and has indeed agreed with the Court's finding that the documents should be sealed, the Estate had the obligation to at least explain why particular documents, especially those upon which the Court did not rely (and, in some cases, did not even need to review), have suddenly become of such paramount interest to the public. The law of the case doctrine allows the Court to prevent itself from being whipsawed. The Estate has failed to make any showing of public interest at all.[4]

By analogy, although generally applicable in considering a party's positions in separate lawsuits, the doctrine of judicial estoppel serves a similar purpose when applied to the facts of this case. It bars a party from asserting a position in a later litigation that is inconsistent with his

---

[4] Neither side has told the Court what its real interest is making or opposing this unsealing motion. It's easy enough to see why Vida wants its internal documents sealed – it is in the STOLI business, and doesn't want its marketing or analytical processes known to competitors or potential challengers like the Estate. The Estate's motivation is a bit more obscure – clearly, the heirs of Cecile Gold shouldn't care one way or the other whether these documents are sealed. It may be that they or, more likely, their lawyers have an interest in sponsoring other anti-STOLI litigation, whether against Vida or others, and perhaps the documents might be of use to them in that regard. Whatever the reason, the Court does not accept the Estate's attempt to portray itself as the standard-bearer of the public interest.

7

position in an earlier litigation where the earlier position was relied upon by the Court. See Mitchell v. Washingtonville Cent. Sch. Dist., 190 F.3d 1, 6 (2d Cir. 1999). The Supreme Court set out non-exclusive considerations for applying the doctrine in New Hampshire v. Maine, 532 U.S. 742, 750-51 (2001):

> First, a party's later position must be "clearly inconsistent" with its earlier position. Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create "the perception that either the first or the second court was misled." ... A third consideration is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.

(citations omitted). The purpose of judicial estoppel is to "preserve the sanctity of the oath by demanding absolute truth and consistency in all sworn positions" and to "protect judicial integrity by avoiding the risk of inconsistent results in two proceedings." Bates v. Long Island R.R. Co., 997 F.2d 1028, 1037 (2d Cir. 1993). Moreover, "[b]ecause the rule is intended to prevent 'improper use of judicial machinery,' judicial estoppel 'is an equitable doctrine invoked by a court at its discretion.'" New Hampshire, 532 U.S. at 750 (citations omitted).

All of these considerations weigh in favor of maintaining this Court's sealing order here. The Estate urged this Court to seal the documents and the Court did. Both the parties and the Court relied on that Order in determining the summary judgment motion. Just as with law of the case, the Estate has to offer a very good reason for reneging on its representations to this Court. It has not offered any reason at all.

Finally, the Estate points to the "parade of horribles" that would result if sealed documents could remain so in perpetuity. The Court sees a much worse parade of horribles – one where parties, after agreeing with each other and the Court finding that the parties' privacy interests in particular discovery materials outweighs the public's qualified right of access, are

8

free to return to Court at any time in perpetuity and force reconsideration of an issue involving voluminous documents that the Court has resolved long ago simply because one of the parties' litigation strategies has evolved. That is a road upon which this Court does not wish to embark.

## CONCLUSION

The Estate's motion to unseal is denied.

**SO ORDERED.**

*Brian M. Cogan*
U.S.D.J.

Dated: Brooklyn, New York
November 5, 2025

9